HENRY C. ALLEN, Appellant, v. ISAAC L. BERRY AND STEPHEN M. JONES, Respondents.

*Fraudulent Conveyances.*—Conveyances held to have been fraudulent and void as a matter of fact.

*Appeal from St. Louis Circuit Court.*

*Hill & Jewett,* and *Gridley & La Due,* for appellant.

*Sharp & Broadhead,* for respondents.

FAGG, Judge, delivered the opinion of the court.

The only question involved in this case is one of fact, and a careful consideration of the evidence preserved leaves no doubt as to its proper solution. Plaintiff claimed to have purchased the real estate sued for at sheriff's sale under two writs of execution issued from the office of the clerk of the Circuit Court of Franklin county. The suit was instituted in that county in the month of August, 1860. A change of venue was taken to the Circuit Court of St. Louis county, where a trial was had and a decree rendered for the defendants. This decree was affirmed at a general term of that court, and is now brought here by appeal.

Plaintiff's title consisted of two deeds executed by the sheriff of Franklin county, conveying to him the following tracts of land, viz.: One tract containing fifty-one and $\frac{72}{100}$ acres, and another twenty-two and $\frac{4}{100}$ acres, situated near the town of Washington in said county ; also the one undevided one-half of lots numbered 7 and 8 in that part of the town of Washington called Bassora, and another piece of property in the said town known and designated as the "Hamilton House," with four lots thereto attached. It is alleged that this property had been conveyed in the winter and spring of the year 1859 by the defendant Berry and his wife to the other defendant Jones for the purpose of hindering, delay-

Allen v. Berry et al.

ing and defrauding Berry's creditors generally and this plaintiff in particular. It is further averred that this conveyance to Jones was made at or about the time that plaintiff had commenced suit against Berry, for the purpose of obtaining the judgments upon which the executions were issued and the property sold as before stated. Also, that there was at the same time a pretended sale to Jones of all the personal property owned by Berry, and that Jones was holding the same together with the real estate aforesaid for the purpose of assisting Berry to carry out his fraudulent designs. A decree was asked for declaring the conveyances to the real estate mentioned null and void, and for a recovery of the same by plaintiff.

The defendants answered separately, denying the allegations of fraud, and each averring the *bona fides* of the transaction. The first mentioned tract was alleged to be the separate property of the wife of the defendant Berry, held in her own right as one of the heirs-at-law of William G. Owens, deceased, and that the same was purchased by Jones for the sum of $3,000 in money.

A great deal was said in the argument of the case in reference to the circumstances connected with the sale and conveyance of this particular tract, but we think this part of the transaction really cuts no figure in the case. The conveyance was made in February, 1859. Mrs. Berry was then living, but died in the year 1864—all of her children having died previous to that time. The only estate of Berry was a tenancy by the curtesy taking effect at the death of his wife. This plaintiff had no demand against the wife, and is therefore not in a situation to attack this conveyance of her property. The motive which may have prompted her to make it is wholly immaterial.

A minute statement of all the facts in this case, with such comments upon them as would show in detail all of the reasons for the conclusion which has been arrived at, is not ne-

cessary. We shall content ourselves by an examination of the most prominent points presented, and by disposing of them as briefly as the nature of the case will admit. All that is said, then, must be applied exclusively to the remainder of the property in question.

The consideration for the sale of this property to Jones is alleged to consist of debts due him by Berry, as well as cer_ tain other debts and obligations of the latter which he had undertaken to and did afterwards actually pay off and discharge. These several sums, together with about three or four hundred dollars in money paid by Jones at the time the conveyances were executed, it is claimed, were fully equivalent to the market value of the property.

Excluding the acts and declarations of Jones and Berry, and estimating the amount of the debts claimed to have been paid by the conveyance of this property to Jones, with the addition of $400 in money, the account would stand about as follows :

<em>Berry to Jones,</em>        <em>Dr.</em>

| | | |
|---|---:|---:|
| To am't paid Wood note and interest, - - | $1,230 | 00 |
| " " " " (small) - - | 372 | 00 |
| " " E. W. Murphy note, &c., - - | 311 | 55 |
| " " " " - - | 196 | 00 |
| " " Rigney note, - - - - | 1,650 | 00 |
| " " taxes, - - - - - | 90 | 00 |
| | $3,849 | 55 |
| Add am't cash paid Berry, - | 400 | 00 |
| Whole am't, - - - - | $4,249 | 55 |

This statement is based upon what is claimed by Jones to be the true amount for what he actually became liable in making the purchase of Berry. Now let us estimate the property at the very lowest figures put upon it by the defendants' witnesses, and we shall have the following :

Allen v. Berry et al.

| | | |
|---|---|---|
| The 22 acre tract, - - - - - | $1,050 | 00 |
| "Hamilton House," - - - - - - | 1,750 | 00 |
| Bassora lots, - - - - - - | 75 | 00 |
| Am't placed in his hands by Judge Owens to pay Rigney note, - - - - - - | 1,650 | 00 |
| Do. to pay County mortgage, - - - | 1,150 | 00 |
| Do. to bal. sale of "Hamilton House" over and above the County debt, - - - - | 850 | 00 |
| Estimated value of personal property, - - | 350 | 00 |
| | $6,875 | 00 |

Showing an excess in his hands, over and above the entire amount claimed to have been paid by him, of    -    -    -    -    -    -    -    $2,625 45

But there is no evidence to show that the small note to Wood claimed to have been paid for Berry was so paid, and hence that amount should be added to this balance, viz.,    -    -    -    -    372 00

The same may be said of the small note paid to Murphy; but exclude that from the calculation, and the account will show a balance against him of    -    -    -    -    -    -    -    -    -    $2,997 45

Nothing is said about the debt to Mary A. Harden, because it seems to be clear that the only note she held against Berry was the one paid by the plaintiff Allen, and which constitutes part of the amount of the judgments he obtained against him.

If, therefore, these conveyances to Jones had been construed as mortgages for the purpose of securing the debts due and owing to Jones, and for which he had agreed to become liable, there would have been property sufficient to have satisfied them all, and still a balance large enough would have remained to pay off the whole amount of indebtedness to Allen. A part of the declarations of Berry might still be sufficient to induce us to give such a construction to

these deeds ; but when the conduct of Berry is considered in connection with the acts and declarations of Jones, there can be no doubt of the fraudulent intent of both.

The statements made by Jones to various parties, and on every occasion when speaking of the purchase of this property, are so inconsistent in themselves, and so completely refuted by the evidence in the cause, as to make it impossible to reconcile them with the idea of good faith on his part.

The testimony of D. Q. Gale, to say nothing of any other fact or circumstance in the case tending to show the intent of Berry in making the conveyances in question, must be taken as conclusive against him. In speaking of these deeds in his examination in chief, he says : " Berry often talked to me about it ; said he intended to pay all but Allen. Berry offered me $1,400 to compromise all his debts to Allen ; said he would take his own time to pay Allen. Spoke to me often about the sale ; said it was done so he could take his own time to pay Allen." Again, on cross-examination he says : " The last conversation I had with Berry was more than two years after the sale. I do not think Mrs. Berry was then dead. At this last conversation, he said his object in making the sale was to enable him to take his time to pay Allen." This testimony is unimpeached and uncontradicted. We do not conceive that anything more could be required to show the fact that the object was to hinder and delay Allen in the collection of his just demands.

The declarations of Jones made to Judge Owens, and perhaps to other witnesses, show conclusively that he was fully apprised of this object. The finding of the court below we think was not warranted by the testimony. The deeds made by Berry and wife of all the property mentioned, except the tract of land owned by Mrs. Berry in her own right, ought, upon the facts proved, to have been held fraudulent and utterly void as to the plaintiff Allen. Its judgment, therefore, will be reversed and the cause remanded. The other judges concur.